IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| M. DIANE KOKEN, : | |
| *Insurance Commissioner of the Commonwealth* : | CIVIL ACTION |
| *of Pennsylvania, in Her Official Capacity* : | |
| *as Liquidator of Reliance Insurance Company,* : | NO. 05-3049 |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| MIZUHO CORP. BANK, LTD, : | |
| : | |
| Defendant. : | |

Jones, J.                                                                                                          June 30, 2009

## MEMORANDUM

On May 19, 2005, Plaintiff M. Diane Koken, Insurance Commissioner of the Commonwealth of the Pennsylvania ("the Commissioner"), in her official capacity as Liquidator of Reliance Insurance Company ("Reliance"), filed a Complaint in the Commonwealth Court of Pennsylvania to recover $9,257,302.86 that Defendant Mizuho Corporate Bank, Limited ("Mizuho"), a successor in interest to Fuji Bank, Limited ("Fuji"), received from Reliance. Mizuho removed the action to this court based on diversity jurisdiction. Presently before the court is the Commissioner's Motion to Remand to the Commonwealth Court of Pennsylvania (Doc. No. 3) and Mizuho's Response in Opposition thereto (Doc. No. 5). For the following reasons, the Commissioner's motion will be denied.

**I.**     **Background**

On March 17, 1998, Reliance entered into a series of written agreements with Woodbridge Films ("Woodbridge") and Mizuho[1] under which Reliance became obligated to guarantee certain loans to be made by Mizuho to Woodbridge to finance motion picture prints and advertising for four motion pictures to be produced by Woodbridge. (Compl. ¶ 18; Resp. in Opp'n to Mot to Remand 3.) Woodbridge's first film failed to generate sufficient income to repay Mizuho's loan, and on September 15, 2000, Mizuho demanded that Reliance make up the shortfall. (Compl. ¶ 21.) On December 21, 2000, Reliance paid $9,257,302.86 to Mizuho in satisfaction of its loan-guarantee obligation. (Compl. ¶ 22.)

On May 29, 2001, upon consideration of the Commissioner's petition filed that day, the Commonwealth Court placed Reliance in rehabilitation pursuant to 40 P.S. § 221.20. (Compl. ¶ 7; Pl.'s Mot. to Remand, Ex. B, Commonwealth Ct. Order of Rehab., May 29, 2001 ("Rehab. Order") ¶ 2.) On October 3, 2001, the Commonwealth Court terminated the rehabilitation of Reliance and appointed the Commissioner as Liquidator of Reliance. (Mot. to Remand, Ex. A, Commonwealth Ct. Order of Liquidation, Oct. 3, 2001 ("Liquidation Order") ¶¶ 1, 3.) The court's Liquidation Order states:

> The Commissioner, as Liquidator, is vested with title to all property, assets, contracts and rights of action ("assets") of Reliance, of whatever nature and wherever located, whether held directly or indirectly, as of the date of the filing of the Petition for Liquidation. All assets of Reliance are hereby found to be in custodia legis of this Court; and this Court specifically asserts, to the fullest extent of its authority, (a) in rem

---

[1] On or about April 1, 2002, the corporate split and merger process of various entities, including Fuji, culminated in the formation of Mizuho, which became successor in interest to Fuji. (Compl. ¶ 5.) For the sake of simplicity, the court shall refer to Defendant simply as Mizuho, even when discussing events prior to April 1, 2002.

> jurisdiction over all assets of the Company wherever they may be located and regardless of whether they are held in the name of the Company or any other name; (b) exclusive jurisdiction over all determinations of the validity and amount of claims against Reliance; and (c) exclusive jurisdiction over the determination of the distribution priority of all claims against Reliance.

(Liquidation Order ¶ 5.)

On March 26, 2002, Mizuho filed a $19,972,475.76 proof of claim against Reliance in the Commonwealth Court. (Mot. to Remand, Ex. D, Mizuho Proof of Claim, March 26, 2002.)

On May 19, 2005, the Commissioner filed a Complaint in the Commonwealth Court to recover from Mizuho the $9,257,302.86 that Reliance had paid to Mizuho on December 21, 2000. (Compl.) The Commissioner claims that, as the statutory Liquidator of Reliance, she is authorized to recover the $9,257,302.86 as a voidable preference because (1) Reliance was insolvent at the time of the transfer (Count I) and (2) at the time of the transfer Mizuho had reasonable cause to believe that Reliance was insolvent or was about to become insolvent (Count II).[2] (Compl. ¶ 30.)

---

[2] Pennsylvania insurance law governing preferences and voidable preferences is as follows:

> A preference is a transfer of any of the property of an insurer to or for the benefit of a creditor, for or on account of an antecedent debt, made or suffered by the insurer within one year before the filing of a successful petition for liquidation under this article the effect of which transfer may be to enable the creditor to obtain a greater percentage of this debt than another creditor of the same class would receive. If a liquidation order is entered while the insurer is already subject to a rehabilitation order, then transfers otherwise qualifying shall be deemed preferences if made or suffered within one year before the filing of the successful petition for rehabilitation or within two years before the filing of the successful petition for liquidation, whichever time is shorter.

Mizuho filed its Notice of Removal to this District Court on June 24, 2005. Mizuho asserts that the action is removable under 28 U.S.C. § 1441(a) because the Court has diversity jurisdiction. On July 25, 2005, Plaintiff filed a Motion to Remand to the Commonwealth Court of Pennsylvania. Mizuho responded on August 15, 2005. The matter was reassigned to my docket on April 28, 2009.

## II.   Standard of Review

A civil action properly may be removed from state court to the federal district court if the district court would have original jurisdiction over the action. 28 U.S.C. § 1441(a) (2008). Federal district courts have diversity jurisdiction over cases where there exists complete diversity between citizens of different states and where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). If the district court lacks subject matter jurisdiction over a removed action, it must be remanded. 28 U.S.C. § 1447(c) (2008).

---

> Any preference may be avoided by the liquidator, if (i) the insurer was insolvent at the time of the transfer; (ii) the transfer was made within four months before the filing of the petition; (iii) the creditor receiving it or to be benefited (sic) thereby or his agent acting with reference thereto had, at the time when the transfer was made, reasonable cause to believe that the insurer was insolvent or was about to become insolvent. . . . Where the preference is voidable, the liquidator may recover the property or, if it has been converted, its value from any person who has received or converted the property . . . .

40 P.S. § 221.30(a) (2008).

**III.**   **Discussion**

      A.      The Commonwealth Court Does Not Assert Exclusive Jurisdiction Over This Matter

In her Motion to Remand, the Commissioner argues that this action must be remanded because the Commonwealth Court has exclusive *in rem* jurisdiction over "all assets of Reliance wherever they may be located and regardless of whether they are held in the name of Reliance or any other name." (Mot. to Remand ¶¶ 2, 5.) This court disagrees.

A careful look at the Commonwealth Court's Liquidation Order demonstrates that that Order does not grant the Commissioner title to the $9,257,302.86 at issue in this action. The Liquidation Order merely vests the Commissioner with title over Reliance's assets "as of the date of filing of the Petition for Liquidation." (Liquidation Order ¶ 5.) The Petition was filed on May 29, 2001, which is over six months after Reliance had paid the $9,257,302.86 to Mizuho. Likewise, the Commonwealth Court does not assert exclusive jurisdiction over this action by way of its Liquidation Order. Immediately after it vests the Commissioner with title to Reliance's assets as of the date of filing of the Petition for Liquidation, the Commonwealth Court asserts *custodia legis* and *in rem* jurisdiction over those same assets, which, once again, do not include the monies paid to Mizuho six months earlier. (Id.) The two other areas over which the Commonwealth asserts exclusive jurisdiction are irrelevant to this action. (See id. (asserting exclusive jurisdiction "over all determinations of the validity and amount of claims against Reliance" and "over the determination of the distribution priority of all claims against Reliance").)

      B.      The *Princess Lida* Doctrine Does Not Apply

Because this action involves an *in personam* claim against Mizuho and the Commonwealth Court does not have custody over Mizuho's assets, the Princess Lida doctrine does not apply. Under the Princess Lida doctrine, "the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of [other courts]" in certain situations. Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466 (1939). When "two suits are *in rem*, or *quasi in rem*, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought, the jurisdiction of the one court must yield to that of the other." Id. In other words, when one court first assumes jurisdiction over property, that court "may exercise that jurisdiction to the exclusion of other courts." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976). "Princess Lida is a 'mechanical rule' which requires that the court in which the second suit is brought yield its jurisdiction if the requisite 'property' showing is made." Dailey v. Hockey League, 987 F.2d 172, 176 (3d Cir. 1992) (citations omitted). "Princess Lida applies when (1) the nature of the litigation in both fora is *in rem* or *quasi in rem,* and (2) the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court." Id.

This court recognizes a split among district courts in the Third Circuit regarding this very issue in voidable preference actions raised by the Commissioner as liquidator of Reliance. See Koken v. AMCOMP Preferred Ins. Co., Civ. A. No. 03-2052, 2004 U.S. Dist. LEXIS 5280, *14 (M.D. Pa. March 24, 2004) (concluding that a voidable preference action related to the liquidation of Reliance "require[d] the exercise of *in personam* jurisdiction over defendants, not *in rem* or *quasi in rem* jurisdiction over an identifiable *res*"); Koken v. Viad Corp., 307

F.Supp.2d 650, 656 (E.D. Pa. 2004) (holding that the Commissioner's voidable preference action was *in personam* because it sought to recover the amount of the alleged preferential payment rather than a specific piece of the insolvent's property)); Koken v. P.LD. Denis, Civ. A. No. 03-2154, 2004 U.S. Dist. LEXIS 650, *8-9 (M.D. Pa. Feb. 6, 2004) (concluding that the Commissioner's voidable preference claim was an *in rem* action involving adjudication of the parties' respective rights to the insolvent's property). Nonetheless, this court holds that the instant action, does not meet either of the two requirements for the Princess Lida doctrine to apply. First, this action is an *in personam* action. The Commissioner simply seeks a judgment against Mizuho for $9,257,302.86, the value of the alleged voidable preference. She does not seek to recover a distinguishable piece of property. (See Compl. ¶ 11 (seeking "judgment against Defendant Mizuho Corporate Bank, Limited voiding the transfer of $9,257,302.86 and/or recovering its value, plus costs of suit, interest, and such other relief as the Court deems proper").) Second, to decide this case, this court need not exercise control over any property under the control of the Commonwealth Court. Mizuho's assets are not under the control of the Commonwealth Court. See United States v. Bank of New York & Trust Co., 296 U.S. 463 (1936) (applying the Princess Lida doctrine where the defendant's funds were under the control of state court and the relief sought could not be granted without exercising jurisdiction over the property already held by the state court). The Princess Lida doctrine does not apply.[3]

    C.        Burford Abstention is Not Appropriate

Federal district courts have a "virtually unflagging obligation" to exercise the jurisdiction

---

[3] Contrary to the Commissioner's argument, the fact that Mizuho filed a proof of claim in the Commonwealth Court and thus subjected itself to the personal jurisdiction of that court is irrelevant to this determination.

given them.  Colorado River Water Cons. Dist. v. United States, 424 U.S. 800, 817 (1976).  "The threshold requirement for a district court to even entertain abstention is a contemporaneous parallel judicial proceeding."  IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d 298, 306 (3d Cir. 2006).  In order for two judicial proceedings to be "parallel," they must involve "the same parties and substantially identical claims, raising nearly identical allegations and issues."  Id. (internal quotations, citations, and alterations omitted).

The Burford abstention doctrine provides a narrow exception to a district courts' obligation to exercise its jurisdiction.  Burford v. Sun Oil Co., 319 U.S. 315 (1943); Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 726 (1996).  According to the Third Circuit, the Supreme Court clearly defined the Burford abstention doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361 (1989) (quoting Colorado River, 424 U.S. at 814); Chiropractic America v. Lavecchia, 180 F.3d 99, 104 (3d Cir. 1999).  Burford abstention is not limited only to federal courts "sitting in equity." Quackenbush, 517 U.S. at 718; id. ("[T]he authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief."). "The purpose of Burford is to avoid federal intrusion into matters of local concern and which are within the special competence of local courts."  Chiropractic America, 180 F.3d at 104 (citations

omitted).

Before invoking <u>Burford</u> abstention, a district court must engage in a two-step analysis. <u>Hi Tech Trans, LLC v. New Jersey</u>, 382 F.3d 295, 304 (3d Cir. 2004) (citations omitted). First, the court must ask whether timely and adequate state law review is available. <u>Id.</u> "Only if a district court determines that such review is available, should it turn to other issues and determine if the case before it involves difficult questions of state law impacting on the state's public policy or whether the district court's exercise of jurisdiction would have a disruptive effect on the state's efforts to establish a coherent public policy on a matter of important state concern." <u>Id.</u>

Beginning with the threshold inquiry, the court finds that abstention would be inappropriate in this case because there is no parallel proceeding in the Commonwealth Court. Although the same parties have a contemporaneous dispute in the Commonwealth Court regarding Mizuho's proof of claim against Reliance for $19,972,475.76 , that claim is separate and distinct from the Commissioner's voidable preference claim. Furthermore, even if there were parallel actions in the Commonwealth Court, the court finds that <u>Burford</u> abstention is inappropriate because no difficult question of state law is at issue and this court's exercise of jurisdiction would not disrupt Pennsylvania's efforts to establish a coherent insurance liquidation policy.[4] This case does not involve a complex state regulatory scheme. <u>See</u> <u>New Orleans Pub. Serv., Inc.</u>, 491 U.S. at 350. It simply requires a court to determine whether the December 2000 payment Reliance made to Mizuho was a preference and, if so, whether that preference was

---

[4] It is undisputed that timely and adequate state law review is available. <u>See</u> <u>Hi Tech Trans, LLC v. New Jersey</u>, 382 F.3d at 304.

voidable.  See 40 P.S. § 221.30(a) (2008).

**IV.    Conclusion**

       For the above reasons, the Commissioner's Motion to Remand will be denied.  An appropriate Order follows.